IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN BATTLE,

   *Petitioner*,

   v.

UNITED STATES OF AMERICA,

   *Respondent*.

Criminal Action No. ELH-11-0110
Related Civil Action No. ELH-15-3814

## MEMORANDUM OPINION

This Memorandum Opinion resolves a hotly contested Motion to Vacate, Set Aside, or

Correct Sentence filed by Kevin Battle, Petitioner, under 28 U.S.C. § 2255.  Mr. Battle

challenges his fifteen-year mandatory minimum sentence, imposed under the Armed Career

Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  He contends that this Court erred in finding him to

be an armed career criminal because one of the three predicate offenses – a 1991 conviction in

Maryland for assault with intent to murder – does not qualify as a "violent felony" under the

ACCA.  In support of his position, Battle relies, *inter alia*, on the Supreme Court's decision in

*Johnson v. United States*, 576 U.S. ____, 135 S. Ct. 2551 (2015), and the Fourth Circuit's

decision in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012).

The initial Petition, with exhibits, was filed by Battle, without counsel.  *See* ECF 80.

However, by Order of March 7, 2016, then Chief Judge Catherine Blake appointed the Federal

Public Defender to represent Mr. Battle.  ECF 84.  Thereafter, by Order docketed June 2, 2016

(ECF 85), the Fourth Circuit granted Petitioner's motion for leave to file a successive petition.[1]

Through counsel, Mr. Battle filed a Supplemental Motion to Vacate on June 2, 2016.  ECF 86.  I

shall refer to ECF 80 and ECF 86 collectively as the "Petition."

---

[1] As discussed, *infra*, Mr. Battle filed his first § 2255 petition in November 2013.  ECF
60.  I denied it in a Memorandum and Order of June 26, 2014.  *See* ECF 72; ECF 73.

The government opposes the Petition. ECF 91 ("Opposition").[2] Petitioner's reply is docketed at ECF 92 ("Reply"). With leave of Court (ECF 95), the government filed a surreply. ECF 96. Since then, counsel have submitted a flurry of correspondence in regard to the Petition. *See* ECF 99; ECF 100; ECF 101; ECF 102; ECF 103; ECF 104; ECF 105; ECF 109.

Under 28 U.S.C. § 2255(c), a hearing is required "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief . . . ." In my view, no hearing is needed here. For the reasons that follow, I shall deny the Petition.

## I.     Factual and Procedural Background

In March 2011, Battle was indicted on the charge of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. The offense ordinarily carries a maximum sentence of ten years' imprisonment. However, if a defendant is found to be an armed career criminal under 18 U.S.C. § 924(e), then he is subject to a mandatory minimum term of fifteen years' imprisonment.

Battle entered a plea of guilty on August 8, 2011 (ECF 38), pursuant to a Plea Agreement. *See* ECF 39. The Plea Agreement reflected the government's position that Battle qualified as an armed career criminal, and therefore he would be subject to the enhanced penalty, *i.e.*, a mandatory minimum sentence of fifteen years' incarceration, under 18 U.S.C. § 924(e). *See* ECF 39, ¶¶ 3, 6(b). Battle reserved the right to argue that he did not qualify as an armed career criminal. *Id.* ¶ 6(b). He also reserved his right to note an appeal as to that issue. *Id.* ¶ 10(b).

---

[2] The government initially sought a stay of this case (ECF 82), based on the anticipated resolution of certain cases in the Fourth Circuit following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The Court granted that Motion. ECF 83. Thereafter, both the government and counsel for Mr. Battle agreed that a stay was inappropriate. *See* ECF 88; ECF 89.

At sentencing on November 8, 2011 (ECF 45), the Court found that Battle was an armed career criminal, pursuant to 18 U.S.C. § 924(e), based on three prior convictions incurred in Maryland: a conviction in 1991 for assault with intent to murder ("AWIM");[3] a conviction in 1998 for possession with the intent to distribute cocaine base; and a conviction in 2006 for possession with the intent to distribute cocaine. Only the AWIM conviction is at issue here.

In particular, I concluded that the offense of assault with intent to murder constituted a violent felony under the so called "Force Clause" of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(i). Under the Force Clause, "violent felony" means any crime punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." In the alternative, I concluded that AWIM constituted a violent felony under ACCA's "Residual Clause," 18 U.S.C. § 924(e)(2)(B)(ii). Accordingly, I sentenced Battle to a term of 180 months' imprisonment, corresponding to the mandatory minimum sentence required under the Armed Career Criminal Act. *See* ECF 48 (Judgment)

Battle appealed his sentence to the Fourth Circuit (ECF 50), claiming that his prior conviction for AWIM does not qualify as a "violent felony" under ACCA's Force Clause. He maintained that the use or threatened use of violent force is not an element of assault with intent to murder, and therefore the trial court erred in finding that AWIM constituted a violent felony. Alternatively, Battle argued that the Residual Clause was unconstitutionally vague. ECF 58 at 6-8. In an unpublished, per curiam opinion issued on October 4, 2012 (ECF 58), the Fourth Circuit

---

[3] As discussed, *infra*, at the time of Battle's conviction in 1991, assault with intent to murder was codified in Art. 27, § 12 of the Maryland Code Annotated (1957, 1987 Repl. Vol., 1991 Supp.). Effective October 1, 1996, the Maryland General Assembly enacted a consolidated assault statute, and divided assault into first and second degrees. *See Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999).

affirmed the Judgment. *See United States v. Battle*, 494 Fed. Appx. 404, 406–07 (4th Cir. 2012); *see also* ECF 58.

In its decision, the Fourth Circuit considered *Johnson v. United States*, 559 U.S. 133, 140 (2010), and stated that, under 18 U.S.C. § 924(e)(2)(B)(i), "'physical force means *violent* force – that is, force capable of causing physical pain or injury to another person.'" ECF 58 at 4 (emphasis in original). Moreover, it noted that under Maryland law common law assault "may be based on a wide range of conduct[.]" *Id.* Indeed, it pointed out that assault under Maryland law "'encompasses several distinct crimes, some of which qualify as violent felonies and others of which do not[.]'" *Id.* at 5 (quoting *United States v. Alston*, 611 F.3d 219, 233 (4th Cir. 2010)). Therefore, the Fourth Circuit stated that an assault conviction in Maryland is not categorically a violent felony. ECF 58 at 5 (citing, *e.g.*, *Alston*, 611 F.3d at 222-23; *United States v. Harcum*, 587 F.3d 219, 224 (4th Cir. 2009); *United States v. Coleman*, 158 F.3d 199, 204 (4th Cir. 1998) (en banc)). However, it also recognized that the Maryland offense of AWIM "required proof of an assault coupled with a specific intent to kill." ECF 58 at 4.

Ultimately, the Fourth Circuit determined that it was not necessary to resolve whether the crime of AWIM qualified as a violent felony under the Force Clause. ECF 58 at 6. Instead, it concluded that Battle's conviction for AWIM constituted a violent felony under ACCA's Residual Clause, 18 U.S.C. § 924(e)(2)(B)(ii). ECF 58 at 6-8; *see also Battle*, 494 Fed. Appx. at 406–07. As of the time of the Fourth Circuit's decision in *Battle*, the Supreme Court had not yet found ACCA's Residual Clause unconstitutional. The Mandate issued on October 26, 2012. ECF 59.

On November 25, 2013, Battle filed his first motion to vacate under 28 U.S.C. § 2255 (ECF 60, "First Petition"), supported by a memorandum of law (ECF 60-2) and several exhibits.

Relying on *Alleyne v. United States*, 570 U.S. 99 (2013), Battle claimed that his Sixth Amendment right to trial by jury was violated by the Court's determination that he qualified as an armed career criminal, and by the resulting imposition under ACCA of the enhanced, mandatory minimum sentence of fifteen years. In addition, Battle raised for the first time the claim that his 2006 drug conviction is not a qualifying ACCA predicate because his offense was not punishable by a sufficient maximum penalty under Maryland law.

The government opposed the First Petition (ECF 65) and Battle replied. ECF 69. Thereafter, the Court ordered the government to respond to a contention lodged in Mr. Battle's reply (ECF 70) and the government filed a Court-ordered Surreply. ECF 71. For the reasons set forth in my Memorandum Opinion (ECF 72) and Order (ECF 73) of June 26, 2014, I denied the First Petition.

## II. Discussion

### A.

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."

Petitioner's claim is rooted in the Armed Career Criminal Act, 18 U.S.C. § 924(e). It provides, in part, that a person convicted under 18 U.S.C. § 922(g) who has "three previous convictions . . . for a *violent felony* or a serious drug offense . . . shall be fined under this title and imprisoned not less than fifteen years[.]" 18 U.S.C. § 924(e)(1) (emphasis added).[4] Of relevance

_____

[4] As to a prior offense under State law, to qualify as a "serious drug offense," a prior State conviction must involve manufacturing, distributing, or possessing with intent to

here, the term "violent felony" is defined in § 924(e)(2)(B)(i), (ii) as any crime punishable by imprisonment for a term exceeding one year that

    (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another ["Force Clause"]; or

    (ii)     is burglary, arson, or extortion, involves use of explosives ["Enumerated Crimes Clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another ["Residual Clause"].

The Armed Career Criminal Act included the so called Residual Clause, 18 U.S.C. § 924(e)(2)(B)(ii), as a basis for finding a violent felony. But, in 2015, in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2556-58 (2015) ("*Johnson II*"), the United States Supreme Court held ACCA's Residual Clause unconstitutionally vague. Therefore, a predicate offense, such as AWIM, can qualify as a violent felony only if it satisfies one of two statutory standards in ACCA: 1) the Enumerated Crimes Clause, § 924(e)(2)(B)(ii), which applies only to the offenses of burglary, arson, extortion, or use of explosives or 2) the Force Clause, under § 924(e)(2)(B)(i).

Clearly, Battle's prior conviction of AWIM does not qualify under the Enumerated Crimes Clause. Therefore, the issue here is whether Battle's 1991 Maryland conviction for AWIM falls within the Force Clause. This requires the Court to determine whether AWIM is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i).

Petitioner maintains that AWIM does not constitute a "violent felony" under the Force Clause because it can be accomplished without the use or threatened use of violent physical force. ECF 86 at 6. As noted, he relies, *inter alia*, on *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*") to argue that a violent felony requires a "substantial degree of force" or

---

manufacture or distribute, a controlled substance, "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

"strong physical force." ECF 92 at 2. Moreover, Petitioner maintains that in *Torres-Miguel*, 701 F.3d at 168, the Fourth Circuit made clear, in "no uncertain terms," that a crime of violence cannot be predicated merely on "'[a]n offense that results in physical injury,'" unless it also involves "the use or threatened use of force . . . ." ECF 92 at 3.

According to Battle, "the government deeply misunderstands" the Supreme Court's decision in *Johnson I*, 559 U.S. 133, and the Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d 165. ECF 92 at 1. In his view, *Johnson I* and *Torres-Miguel* "dictate that Maryland assault with intent to murder is not a 'violent felony' under the ACCA force clause because it can be committed without violent physical force, *i.e.*, 'strong physical force.'" *Id.* For example, he posits that a murder committed by poisoning does not require use of force and thus it would not amount to a violent felony. ECF 92 at 2. As another illustration, Petitioner observes that assault with intent to murder can be committed by acts of omission, such as refusing to provide food or medicine to a child, which would not require the use of force. ECF 92 at 6; ECF 105 at 2.[5] Consequently, Battle argues that the Court's sentence of 180 months is "a *per se* illegal sentence, not only in violation of United States law, but in excess of the 10-year statutory maximum" that would otherwise apply to the underlying offense of being a felon in possession of a firearm. ECF 86 at 2.

Similarly, in Battle's original sentencing submission (ECF 43), he postulated hypotheticals to attempt to show that an offender could commit a first-degree assault in Maryland without using violent force. He asserted: "For example, a defendant could open a victim's mouth while he is asleep and pour a lethally-poisoned drink down his mouth; or a

---

[5] In Maryland, conduct of omission may be the basis for a second degree murder conviction under the theory of depraved heart murder. *See e.g.*, *In re Eric F.,* 116 Md. App. 509, 520-22, 698 A.2d 1121, 1126-27 (1997) (affirming conviction of second degree murder when defendant left an intoxicated, unconscious young woman in frigid weather without seeking assistance, and she died of hypothermia).

defendant could take hold of a victim's arm and lead him outside in below freezing temperatures with the intent that he freeze to death; or with a slight bump to the hip, a defendant could send a victim onto a busy road with the intent that he be hit by a car." *Id.* at 5. Moreover, Battle cited, *inter alia*, *United States v. Andino-Ortega*, 608 F.3d 305 (5th Cir. 2010), and *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2nd Cir. 2003), to support his position. ECF 43 at 4-5.

*Andino-Ortega*, 608 F.3d 305, an illegal reentry case, involved U.S.S.G. § 2L1.2, which contains a force clause identical to the Force Clause in ACCA. 608 F.3d at 309. There, the defendant received a 16-level enhancement to his offense level under § 2L1.2(b)(1)(A)(i), because the trial court concluded that a prior conviction in Texas for injury to a child constituted a crime of violence. The Fifth Circuit disagreed, and offered the example of "putting poison or another harmful substance in [the victim's] food or drink," to illustrate that the underlying offense could be committed without the use of force. *Id.* at 311.

*Chrzanoski*, 327 F.3d 188, presented the issue of whether a prior Connecticut assault conviction constituted a crime of violence, *i.e.*, whether it had as an element the use of force, as required by 18 U.S.C. § 16(a), under the Immigration and Nationality Act. The Second Circuit noted that physical injury could be caused "by guile, deception, or even deliberate omission." *Id.* at 195. For example, a doctor could "deliberately withhold[] vital medicine from a sick patient . . . ." *Id.* at 196. The Second Circuit concluded that the assault in issue was not a crime of violence.

The government vigorously disputes Petitioner's position. It points out that "in every aspect but completion," AWIM "equals first degree intentional murder." ECF 96 at 2. According to the government, Petitioner's interpretation of the offense of AWIM "would

eviscerate ACCA, and would be directly contrary to the Supreme Court's rejection of this rationale in *United States v. Castleman*, 134 S. Ct. 1405 (2014)." *Id.*

**B.**

Supreme Court and Fourth Circuit precedent make clear that, in determining whether a crime such as AWIM is a "violent felony" under the Force Clause of the ACCA, a sentencing court must "consider the offense generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008); *cf. Sessions v. Dimaya*, ___ U.S. ___, 138 S. Ct. 1204 (2018). The cases are legion that, under the so called "categorical approach," a court generally looks only to the elements of the underlying offense, not the facts of the case or the defendant's actual conduct, to determine whether an offense qualifies as a violent felony or a crime of violence. *See, e.g., Mathis v. United States*, ____ U.S. ____, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 133 S. Ct. 2276 (2014); *Moncrieffe v. Holder*, 569 U.S. 184 (2013); *James v. United States*, 550 U.S. 192, 202 (2007); *Taylor v. United States*, 495 U.S. 575, 602 (1990); *United States v. Winston*, 850 F.3d 677, 683-85 (4th Cir. 2017); *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016).

By analogy, in analyzing whether a prior offense constituted a crime of violence for career offender purposes, the Fourth Circuit explained the two-step process in *United States v. Peterson*, 629 F.3d 432 (4th Cir. 2011). It said: "First, a court must distill a 'generic' definition of the predicate offense based on how the offense is defined 'in the criminal codes of most states.'" *Id.* at 436 (quoting *Taylor*, 495 U.S. at 598). "Second, after finding the generic form of the predicate offense, a court must determine whether the defendant's prior conviction constituted a conviction of the generic offense." *Peterson*, 629 F.3d at 436. Again, the

"determination is made categorically, not by comparing the defendant's prior *conduct* with the generic offense, but rather by comparing the *elements* of the crime of conviction with the generic offense." *Id.* (emphasis in original).

In *Johnson I*, 559 U.S. at 140, the Supreme Court said, in the context of 18 U.S.C. § 924(e)(2)(B)(i), that "the word 'violent' . . . connotes a substantial degree of force" or "'strong physical force.'" *Id.* The "phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* (Emphasis in original). The *Johnson I* Court concluded that the offense of battery under Florida law was not categorically a violent felony under the ACCA, because a battery in Florida can be committed through "*any* intentional physical contact, 'no matter how slight.'" *Id.* at 138 (emphasis in original; citation omitted). In other words, "battery" includes a variety of different criminal behaviors, "some of which require violent force and some of which do not." *Id.* at 144.

Similarly, the Fourth Circuit has recognized that an assault conviction in Maryland may be predicated on a wide variation in conduct, including only slight contact or "indirect applications of force . . . ." *United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998) (internal quotation marks omitted), *cert. denied*, 525 U.S. 849 (1998); *see also United States v. Coleman*, 158 F.3d 199, 201 (4th Cir. 1998) (en banc). Moreover, the Fourth Circuit has determined that a conviction in Maryland for second-degree assault is categorically not a "violent felony" under ACCA's Force Clause. *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013).

The categorical approach applies to convictions for common law crimes as well as statutory crimes. For instance, in *United States v. Jenkins*, 631 F.3d 680, 684 (4th Cir. 2011), the Fourth Circuit used the categorical approach to determine whether the Maryland common law crime of resisting arrest was a crime of violence for "career offender" purposes under § 4B1.1 of

the Sentencing Guidelines. Notably, § 4B1.2(a) defines a crime of violence as it is defined under ACCA.[6] Using the categorical approach, the Court concluded that resisting arrest is a crime of violence. In so finding, the Court pointed to the third element of the crime – the intent to resist lawful apprehension – and said that the offense "cannot be committed negligently or recklessly, but must be committed intentionally . . . ." *Id.* at 685; *see also United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003) (concluding that resisting arrest is a violent felony under the ACCA).

As with resisting arrest, it is clear that the offense of AWIM cannot be committed negligently or recklessly. Rather, it embraces the specific intent to commit murder, as discussed, *infra*.

## C.

In *McNeill v. United States*, 563 U.S. 816 (2011), the Supreme Court stated that, "when determining whether a defendant was convicted of a 'violent felony'" under the ACCA, using either the categorical or modified categorical approach, federal courts look "to the version of state law that the defendant was actually convicted of violating." Therefore, I must consider whether assault with intent to murder, as it was defined in 1991 at the time of Mr. Battle's conviction for that offense, constituted a "violent felony" within the meaning of the ACCA.

In 1991, assault was a common law crime in Maryland. *See Lamb v. State*, 93 Md. App. 422, 613 A.2d 402 (1992), *cert. denied*, 329 Md. 110, 617 A.2d 1055 (1993). As Judge Moylan

---

[6] It sometimes becomes necessary for a court to use the "modified categorical approach." The modified categorical approach is appropriate if the offense in issue is divisible into a number of distinct crimes, "some of which require violent force and some of which do not." *Johnson I*, 559 U.S. at 144. *See, e.g.*, *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc); *United States v. Clay*, 627 F.3d 959, 966 (4th Cir. 2010). If the modified categorical approach applies, then, under *Shepard v. United States*, 544 U.S. 13, 21 (2005), the sentencing court may look to certain "conclusive records made or used in adjudicating guilt" to determine whether the defendant was convicted of the violent variety of the offense or, instead, the non-violent variety.

made clear in *Lamb*, assault could be committed in a variety of ways, such as by way of a mere offensive touching. In *Lamb*, he exhaustively catalogued the various kinds of offenses that come under the umbrella of common law "assault" in Maryland.

However, at the relevant time, the Maryland General Assembly had also statutorily delineated certain aggravated forms of assault, including assault with intent to murder. In 1991, assault with intent to murder was codified in Art. 27, § 12 of the Annotated Code of Maryland (1957, 1987 Repl. Vol., 1991 Supp.). Article 27, § 12 stated, in pertinent part: "Every person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 30 years."

Although "assault with intent to murder" was not further defined by statute, its meaning was explained in case law. In *Hardy v. State*, 301 Md. 124, 128, 482 A.2d 474, 477 (1984), the Maryland Court of Appeals said: "The statute does not define the crime, but we have defined it as an assault upon the victim coupled with an intent to murder, which can be shown by proof that the crime would have been murder if the victim had died." *Accord Faulkner v. State*, 301 Md. 482, 504, 483 A.2d 759, 771 (1984).

In *Abernathy v. State*, 109 Md. App. 364, 366, 675 A.2d 115, 116 (1996) (Moylan, J.), decided in March 1996, prior to codification of the assault law, the Maryland Court of Special Appeals characterized assault with intent to murder as an inchoate criminal homicide and said that the "exclusive and indispensable *mens rea* of any of the inchoate criminal homicides is the specific intent to kill." *Id.* at 373, 675 A.2d at 120. Moreover, the court said that, as to AWIM, "it is now well established that the only *mens rea* that will support a conviction is the specific intent to kill." *Id.* The *Abernathy* Court explained, *id.*: "Assault with intent to murder is, by its very wording, a specific intent crime. The obvious question is, 'The specific intent to do what?'

The obvious answer is, 'The specific intent to bring about the death of the assault victim.'" Moreover, the court plainly said, *id.* at 373-74, 675 A.2d at 120: "In terms of the clear and unambiguous meaning of words, it is inconceivable that there could be an intent to murder the victim that did not intend for the victim to die." *See also Franklin v. State*, 319 Md. 116, 571 A.2d 1208 (1990); *State v. Jenkins*, 307 Md. 501, 515 A.2d 465 (1986).

Effective October 1, 1996, *i.e.*, a few months after *Abernathy* was decided, the Maryland General Assembly implemented a new, consolidated assault statute. Among other things, the 1996 Act "abrogated the common law offenses of assault and battery" in Maryland, as well as the former aggravated assault crimes, including "assault with intent to murder." *Robinson v. State*, 353 Md. 683, 696, 728 A.2d 698, 704 (1999). Assault was defined as "the offenses of assault, battery, and assault and battery, which retain their judicially determined meanings." And, the legislature divided assault into first and second degrees. First-degree assaults included "intentionally caus[ing] or attempt[ing] to cause serious physical injury to another" and assaults committed "with a firearm." Second-degree assaults included all assaults other than first-degree assaults.

The 1996 enactment, as amended, is now codified in Title 3 of the Criminal Law Article of the Maryland Code (2012 Repl. Art., 2017 Supp.). In particular, Assault in the First Degree is prohibited by C.L. § 3-202. Under C.L. § 3-202(a)(1), "[a] person may not intentionally cause or attempt to cause serious physical injury to another." And, C.L. § 3-201(d) defines "serious physical injury" as physical injury that "(1) creates a substantial risk of death; or (2) causes permanent or protracted serious: (i) disfigurement; (ii) loss of the function of any bodily member or organ; or (iii) impairment of the function of any bodily member or organ." Under C.L. § 3-

202(a)(2), a first-degree assault may also be committed by way of use of a firearm to commit an assault.

Notably, in *Johnson I*, 559 U.S. at 138, the Supreme Court said that, in determining whether a State offense is a violent felony, federal courts are "bound by [a state] Supreme Court's interpretation of state law." 130 S. Ct. at 1269. In Maryland, a battery of the "offensive touching" variety simply will not suffice to support a charge of assault with intent to murder in Maryland. The requirement of an intent to murder necessarily limits the types of assault that could form the predicate for the assault element of the offense; the many varieties of simple assault are incompatible with an intent to murder. As developed in Maryland case law, the use or attempted use of violent force was a *sine qua non* of conviction for AWIM.

It is also noteworthy that Maryland has its own regime of enhanced sentencing for repeat offenders who commit "crimes of violence." The Maryland sentencing statutes in effect at the time of Mr. Battle's conviction and at present define assault with intent to murder as a "crime of violence" for Maryland sentencing enhancement purposes. *See, e.g.*, *Stouffer v. Holbrook*, 417 Md. 165, 167 n.2, 9 A.3d 25, 27 n.2 (2010) (noting that under the present sentencing regime, as codified in C.L. § 14-101, "crimes of violence include assault in the first degree, assault with intent to murder, [and other former aggravated assaults], but not assault in the second degree"); *see also* Md. Code Ann. (1957, 1987 Repl. Vol., 1991 Supp.), Art. 27, § 643B(a) (predecessor provision to C.L. § 14-101, defining "crime of violence" to include "assault with intent to murder," but not including simple assault).

Assault with intent to murder, as it has been interpreted and defined in Maryland case law, leads to the conclusion that it is an offense that "has as an element the use, attempted use, or

threatened use of physical force against the person of another," and therefore qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i).

**D.**

Recent jurisprudence in both the Supreme Court and the Fourth Circuit compels the conclusion that the Maryland offense of assault with intent to murder — now assault in the first degree — is a violent felony for the purpose of ACCA's Force Clause.

*United States v. Castleman*, ___ U.S. ___, 134 S. Ct. 1405 (2014), is instructive. There, the defendant was charged in federal court with possession of a firearm after being convicted of a misdemeanor crime of violence. Under 18 U.S.C. § 922(g)(9), any person "who has been convicted . . . of a misdemeanor crime of domestic violence" may not possess a firearm or ammunition. *Id.* at 1409. Previously, the defendant had pleaded guilty under Tennessee law to the misdemeanor crime of intentionally or knowingly causing bodily injury to his child's mother. The Supreme Court concluded that the misdemeanor conviction qualified as "a misdemeanor crime of domestic violence." *Castleman*, 134 S. Ct. at 1408.

Among other things, the federal statute defined a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or a attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim . . . ." *See* 18 U.S.C. § 921(a)(33)(A). The Supreme Court considered the portion of the definition pertaining to the use of physical force. *Id.* at 1409. Distinguishing *Johnson I*, it concluded that, for the purpose of § 922(g)(9), the requirement of physical force is satisfied "by the degree of force that supports a common-law battery conviction." *Id.* at 1413.

The Tennessee statute at issue was a "'divisible statute.'" *Id.* (citation omitted). Therefore, the Supreme Court applied the modified categorical approach, and regarded the

analysis as "straightforward." *Id.* at 1414. The Court explained that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id.* It reasoned that, regardless of whether an injury resulted from direct or indirect means, the force used was categorically violent if it caused a violent result. *Id.* at 1415.

Notably, the Court said that "the common-law concept of 'force' encompasses even its indirect application." *Id.* Recognizing that "'a battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance,' such as a laser beam" (*id.* at 1414-1415) (citations omitted)), the Court said: "It is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1415.

Further, and of import here, the Court stated that a person who commits a poisoning has engaged in the use of force, but not because "'he or she sprinkles poison in the victim's drink.'" *Id.* at 1415 (citations omitted). Rather, "it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* at 1415.

Despite *Castleman*, petitioner doggedly insists that *Torres-Miguel* 701 F.3d 165, "remains good law" (ECF 98 at 2) and that *Castleman* failed to overrule the reasoning of *Torres-Miguel*. *Id.* at 8. As indicated, in *Torres-Miguel*, the Fourth Circuit determined that an offense which had as an element "resulting in death or great bodily injury" did not categorically require the use of physical force because an offense "may *result* in death or serious injury without involving *use* of physical force." *Id*. at 168 (emphasis in the original).

I agree with the government that, in recognizing that the act of employing poison to cause physical harm constitutes the use of force, the *Castleman* Court undermined the poison

hypothetical in *Torres-Miguel* with regard to use of force. *See* ECF 96 at 3. The proper focus is on whether the defendant caused a violent result; if so, the conduct amounts to violent force.[7]

The recent case of *In re Irby*, 858 F.3d 231 (4th Cir. 2017), underscores that Battle's reliance on the distinction "between indirect and direct application of force . . . no longer remains valid." *Id.* at 238. In that case, the Fourth Circuit concluded that the crime of second-degree retaliatory murder under 18 U.S.C. § 1513(a)(1)(B) and § 1111(a) qualifies as a crime of violence under the force clause of 18 U.S.C. § 924(c).[8] In reaching its conclusion, the Court relied on *Castleman* and *Johnson I*, 559 U.S. 133, stating that these cases "make it pellucid that [federal] second-degree retaliatory murder is a crime of violence under the force clause because unlawfully killing another human being requires the use of force 'capable of causing physical pain or injury to another person.'" *Id.* at 236 (citation omitted).

Similarly, in *United States v. Burns-Johnson*, 864 F.3d 313, 318 (4th Cir. 2017), the Fourth Circuit said: "*Castleman* abrogates our statement in *Torres-Miguel* that the use of poison would not constitute the use of force . . . ." And, in *United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017), the Court said: "While the holding of *Torres-Miguel* may still stand following the

---

[7] A recent example from world events readily illustrates the point. A former Russian spy, Sergei Skripal, and his daughter, were poisoned by a deadly nerve agent smeared on a door handle of his home. *See* Ellen Barry & David E. Sanger, *Poisoned Door Handle Hints at High-Level Plot to Kill Spy, U.K. Officials Say*, N.Y. Times, Apr. 2, 2018, at A5. Although Skripal and his daughter survived, both were grievously injured. *Id.* Under Battle's view, such conduct would not constitute the use of force. To ignore the consequences of such conduct, as Battle would urge the Court to do, flies in the face of reason and logic.

[8] *In re Irby* arose in regard to the Fourth Circuit's consideration of Irby's request to file a successive post-conviction challenge to his § 924(c) conviction, in light of the Supreme Court's decision in *Johnson II*, 135 S. Ct. 2551. Battle suggests that, in that context, *Irby* is not persuasive, because the Court was not deciding the force issue, and its decision was in direct conflict with the Fourth Circuit's previous decisions in *Torres-Miguel* and *United States v. McNeal*, 818 F.3d 141, 156 n.10 (4th Cir. 2016). Petitioner also argues that the three judge panel in *Irby* lacked the authority to overrule those decisions. ECF 101 at 1; ECF 105 at 1-2.

Supreme Court's decision in *Castleman*, its reasoning can no longer support an argument that the phrase 'use of physical force' excludes indirect applications."

And, the Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204, is consistent with the rationale articulated above. There, the Supreme Court considered the meaning of "crime of violence" in the context of an "aggravated felony" under the Immigration and Nationality Act ("INA"). An "aggravated felony" in the INA includes a crime of violence. Applying *Johnson II*, 135 S. Ct. 2551, to Section 16(b) of the INA, which corresponds to the ACCA's Residual Clause, the plurality found it unconstitutionality vague. Of relevance here, Justice Kagan wrote for the plurality, *id.* at 1220: "In interpreting statutes like § 16(b), this Court has made clear that 'physical force' means 'force capable of causing physical pain or injury.'" (Citation omitted). She added, *id.* at 1220-21: "[A] court must not only identify the conduct . . . but also gauge its potential consequences. Or said a bit differently, evaluating the risk of 'physical force' itself entails considering the risk of 'physical injury.'" And, said Justice Kagan, *id.* at 1221: "[T]he force/injury distinction is unlikely to affect a court's analysis of whether a crime qualifies as violent."

I also find persuasive the recent decision of Judge Chasanow in *Williams v. United States,* DKC-10-0109, 2017 WL 5668206 (D. Md., Nov. 27, 2017). There, the petitioner filed a motion to vacate under 28 U.S.C. § 2255, arguing that he should not have been found an armed career criminal because his Maryland convictions for assault with intent to maim and second-degree attempted murder did not satisfy the Force Clause and thus were not violent felonies. *Id.* at *2.

Citing *Castleman*, 134 S. Ct. 1405; *In re Irby*, 858 F.3d at 238; *Burns-Johnson*, 864 F.3d at 318; and *Reid*, 861 F.3d 529, Judge Chasanow squarely rejected the petitioner's contention. She found the recent Fourth Circuit cases "persuasive authority for the proposition that

*Castleman* abrogated *Torres-Miguel*." *Williams*, 2017 WL 5668206 at *3. And, she observed that she is "bound to follow the Supreme Court's decision in *Castleman*." *Id.*

Moreover, with respect to the petitioner's claim that the Fourth Circuit's decisions were merely dicta in regard to *Torres-Miguel*, Judge Chasanow found the assertion both "incorrect and irrelevant." *Williams*, 2017 WL 5668206, at *3. As to *Irby*, she observed that, in order for the Fourth Circuit to deny the petitioner's request to file a successive post-conviction action, the Fourth Circuit "necessarily had to conclude that the petitioner's arguments lacked merit." To reach this conclusion, the Court "found that even though no means were specified, the ends specified – the unlawful killing of another – required the use of physical force. This contradicted *Torres-Miguel's* holding that only crimes where the means were identified as physical force could satisfy a requirement that a prior offense have as an element the use of physical force." *Williams*, at *3 (citing *In re Irby*, 858 F.3d at 234-238).

Notably, Judge Chasanow recognized that in Maryland, to be convicted of attempted second-degree murder, a person must "'harbor[] a specific intent to kill the victim and [have] taken a substantial step toward killing the victim.'" *Id.* at *4 (citing *Harrison v. State*, 382 Md. 477, 489 (2004)). Further, she observed that the offense of assault with intent to maim was "'the inchoate form of intent-to-commit-grievous-bodily-harm murder.'" *Id.* at *5 (citing *Glen v. State*, 68 Md. App. 378, 390 (1986)). Put another way, it was a type of attempted murder. *Williams*, *id.* at *5 (citing *Thornton v. State*, 397 Md. 704, 714 (2007)). And, "Attempted murder categorically requires the use of violent force." Therefore, she concluded that the Maryland offense of assault with intent to maim is a violent felony. *Id.* That reasoning is equally applicable to the offense of AWIM.

Of particular relevance here, Judge Chasanow observed that "'it goes against common sense'" for the court to conclude that attempting to kill another human being is not a crime of violence. *Williams*, *id.* at *4. That logic resonates here.

### III.  Conclusion

In *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016), the court concluded that Maryland convictions for robbery with a deadly weapon constituted "violent felonies" under the ACCA. It rejected as "farfetched" the examples provided by the defendant to support his claim that the crime is not a violent felony. *Id.* at 484. In reaching its conclusion, the court cited the admonition of the Supreme Court "against excessive 'legal imagination.'" *Id.* (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 192 (2007); *Moncrieffe v. Holder*, 569 U.S. at 191; *see also United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017) ("Hypothetical scenarios involving no physical contact by the perpetrator (luring a victim to drink poison or infecting a victim with a disease) do not avoid coverage under § 924(e)(2)(B)(i))."

As I see it, in arguing that AWIM is not a violent felony, Battle relies on the kind of "excessive 'legal imagination'" about which the Supreme Court has cautioned. Moreover, his position is at odds with the precept that, in interpreting a statute, judges are directed to use their common sense "to avoid an absurd result." *In Re Irby*, 858 F.3d at 237 (citing *Abramski v. United States*, ___ U.S. ___, 134 S. Ct. 2259, 2267 (2014)). As the Court said in *In Re Irby*, 858 F.3d at 237: "It is absurd to believe that Congress would have intended poisoners and people who use their wits to place someone in the path of an inevitable force to avoid the force clause of § 924(c)."

I am readily satisfied that Petitioner's 1991 conviction for assault with intent to murder constitutes a violent felony under the Force Clause of the Armed Career Criminal Act.

## IV.  Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability ("COA") when it enters a final order adverse to the applicant.  *See Jackson v. United States*, Civ. No. PJM-12-421, 2012 WL 869080, *1 (D. Md. Mar. 13, 2012).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001).

In my view, reasonable jurists would not find Mr. Battle's claims debatable.  However, given the evolving jurisprudence with respect to issues such as the one presented here, I believe a Certificate of Appealability is appropriate.[9]

A separate Order follows.

Date:  April 26, 2018                               _____/s/_____

                                                     Ellen Lipton Hollander
                                                     United States District Judge

---

[9] Under Rule 11(a), if the district court denies a COA, a party may seek a certificate from the Court of Appeals under Federal Rule of Appellate Procedure 2.  However, the petitioner may not appeal the district court's denial of the COA.